# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS FISHER, KATHLEEN HALLORAN, and GEORGE BEHRENS, <br><br> Defendants. | No. 07 C 4483 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

## I.    BACKGROUND

The United States Securities and Exchange Commission (SEC or Commission) filed this complaint on August 9, 2007. The Commission asserts four counts against each of the three defendants: Thomas Fisher, Kathleen Halloran, and George Behrens (collectively, Defendants). Defendants are all former officers of Nicor, Inc. and its main subsidiary, Nicor Gas.

The Commission alleges that Defendants engaged in a scheme to falsify Nicor's financial reporting. The allegations center around Nicor's activities under its performance-based rate plan (PBR).[1] The SEC further alleges that Defendants made or authorized false and misleading financial statements about the company's financial performance to the company's investors, the public, the SEC and the Illinois Commerce Commission (ICC). The SEC points to a number of

---

[1] The Commission defines a PBR plan in its complaint. It says that such a plan is one "whereby a utility compares its actual cost of gas distribution against a market-sensitive benchmark." Amended Complaint, ¶ 19. The complaint goes on to explain that "[t]o the extent that the actual costs are lower than the benchmark, the savings are shared between the utility and its consumers. To the extent that actual costs are higher than the benchmark, the resulting losses likewise are shared between the utility and its customers." *Id.*

the financial statements Nicor issued between 1999 and 2002 and argues that they contain false and misleading statements.

On July 18, 2002, Nicor issued a press release disclosing that allegations had been made concerning potential impropriety in connection with the company's accounting for the PBR plan. The press release indicated that the ICC was investigating the allegations and that Nicor's board of directors had appointed a committee of independent, non-management directors to conduct an inquiry. The company supplemented the July 18 release with another press release the following day (July 19, 2002). The July 19 release indicated that "the Nicor Gas performance-based rate plan may have a material adverse effect on earnings in a particular period." Also on July 19, 2002, Nicor's stock price declined by roughly 40%. In the months after Nicor issued these July press releases, a number of private plaintiffs filed securities class action lawsuits.

On August 14, 2002, Nicor filed additional documents with the SEC, which the Commission argues contain actionable misstatements. In particular, the Commission points to a Form 8-K[2] and a Form 10-Q.[3] The 8-K provided certifications regarding the accuracy of Nicor's 2001 filings. The SEC says that these 2001 filings were not, in fact, accurate, and thus says that these certifications are actionable. Defendants point out that Mr. Fisher and Ms. Halloran provided the certifications in the Form 8-K "except as corrected or supplemented in a subsequent

---

[2]Form 8-K is the "'current report' companies must file with the SEC to announce major events that shareholders should know about." United States Securities and Exchange Commission, http://www.sec.gov/answers/form8k.htm (last visited May 6, 2008).

[3]The Form 10-Q is filed quarterly and "includes unaudited financial statements and provides a continuing view of the company's financial position during the year. The report must be filed for each of the first three fiscal quarters of the company's fiscal year." United States Securities and Exchange Commission, http://www.sec.gov/answers/form10q.htm (last visited May 6, 2008).

covered report."[4]  Defendants assert that this language, coupled with the disclosures made in the "covered reports," insulates the August 14 certifications from being false or misleading.

In the Form 10-Q filed on August 14, 2002, Nicor explained that "[t]he company's new independent public accountant . . . was unable to complete the review of the condensed unaudited financial statements included herein . . . due to uncertainties surrounding the current review of the gas distribution segment's [PBR] plan referred to in the Contingencies note beginning on page 8."  The Contingencies note went on to include cautionary language about the allegations of improprieties in connection with the PBR plan.  The note also listed some of the inquiries that were ongoing.

On October 28, 2002, a consultant that Nicor's special committee had retained to look into the allegations of impropriety regarding the accounting for the PBR plan issued a report detailing his findings and conclusions.  The next day, Nicor issued a press release accepting the findings and conclusions outlined in the report.

The Commission filed its complaint in this case on August 9, 2007.  The Commission seeks, among other things, an order of permanent injunction, an order prohibiting Defendants from acting as officers or directors of certain issuers, an order requiring Defendants to disgorge all ill-gotten gains, and civil penalties under 15 U.S.C. §§ 77t(d) and 78u(d)(3).

Defendants filed two motions to dismiss.  One [Docket #27] sought dismissal of the complaint based on the applicable statute of limitations, or, in the alternative, to have certain of

---

[4]The Form 8-K defines the term "covered report" to include (i) Nicor's Form 10-K for fiscal year 2001 (filed 3/8/2002); (ii) all Forms 10-Q, 8-K, and definitive proxy materials filed subsequent to the 2001 Form 10-K; and (iii) any amendments to (i) or (ii) filed on or before August 14, 2002.

the allegations stricken. The other [Docket #30] sought dismissal of the complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). The Commission filed one response addressing both motions. It also, pursuant to my invitation, amended its complaint. In their reply brief, Defendants really only address the statute of limitations arguments.

Both because of the amendments the Commission made to the complaint and because Defendants did not address the 9(b) arguments in their reply brief, Defendants' Motion To Dismiss The Complaint Pursuant To Federal Rules of Civil Procedure 9(b) and 12(b)(6) [Docket #30] is denied. For the reasons outlined below, Defendants' Joint Motion to Dismiss The Complaint Or, In The Alternative, To Strike Certain Allegations [Docket #27] is granted in part.

## II. THE COMMISSION'S REQUEST FOR CIVIL PENALTIES

Defendants assert that the Commission's complaint is time-barred. The various securities laws under which the Commission brings this action do not contain their own statute of limitations. There is, however, a catch-all five-year statute of limitations found in 28 U.S.C. § 2462. In pertinent part, that code section provides that:

> an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . .

28 U.S.C. § 2462.

Courts have found that this five-year period applies to government actions to enforce administrative penalties. *See, e.g., Johnson v. SEC*, 87 F.3d 484, 492 (D.C.Cir. 1996) (finding that 28 U.S.C. § 2462 applies to an action under Exchange Act § 15(b)); *United States v. Meyer*, 808 F.2d 912, 914 (1st Cir. 1987) (applying § 2462 to an action under 8 U.S.C. § 801 *et seq.*); *SEC v. Misner*, 07-cv-01640, 2008 WL 638387 (D. Colo. March 5, 2005) (holding that the

4

SEC's "claims are barred by the five-year statute of limitations found at 28 U.S.C. § 2462, insofar as Plaintiff seeks civil penalties"); *SEC v. Caserta*, 75 F.Supp.2d 79, 89 (E.D.N.Y.1999) (finding that 28 U.S.C. § 2462 applies to SEC civil penalty claims). Thus, to the extent the SEC seeks civil penalties,[5] the five-year statute of limitations does apply.

Having established that a five-year statute of limitations governs the civil penalties portion of the Commission's complaint, the salient issues become: (A) when should I deem the clock to have started running; and (B) which of Defendants' alleged misstatements are actionable (and did any of those statements occur within the allowable period)?

   A.   *When Did The Limitations Clock Start Running?*

The first question—when did the clock start running—actually spawns two sub-questions: (1) should the "discovery rule" apply here; and if so, (2) when did the claim first "accrue"?

   **1.   Does The "Discovery Rule" Apply?**

To determine the date when the clock started running, it is necessary to identify the event that triggers the clock. In general, a limitations period begins to elapse at the time a defendant commits the act constituting the alleged wrong. The "discovery rule,"[6] however, when it applies, can delay the start of the limitations clock. The Seventh Circuit has described the "discovery

---

[5]The parties agree that there is no statute of limitations for equitable claims. This is, in fact, the law. *See S.E.C. v. Alexander*, 248 F.R.D. 108, 115 (E.D.N.Y. 2007) ("[E]quitable claims which do not constitute a 'civil fine, penalty, or forfeiture' are not subject to the statute of limitations contained in Section 2462."); *see also SEC v. Jones*, 476 F.Supp.2d 374, 380 (S.D.N.Y. 2007). Defendants argue that the SEC's claims for equitable relief are mislabeled and should be thrown out with the rest of the case. I will address those arguments below, *see infra* Section III.

[6]This is sometimes called the "discovery doctrine" or the "discovery of violation" rule.

rule" as "[t]he rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The rule is premised on the notion that a plaintiff cannot assert its claim for damages unless and until it knows that it has been harmed. *See 3M Co. (Minnesota Min. and Mfg.) v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994). The parties disagree about whether the "discovery rule" should apply here. The Commission seeks to have the "discovery rule" apply because that would serve to delay the time when the limitations clock will be deemed to have started running. The rule would thereby benefit the Commission by extending out the time in which it could file its suit without having its claim for civil penalties barred by the five-year limit.

At the outset, I note that the neither the U.S. Supreme Court nor the Seventh Circuit has directly addressed whether the "discovery rule" applies to SEC claims for civil penalties. One district court noted recently that "[g]enerally, courts have concluded that a claim for penalties subject to Section 2462 accrues at the time the violation giving rise to the penalties occurs." *SEC v. Alexander*, 248 F.R.D. 108, 116 (E.D.N.Y. 2007) (*citing See 3M Company (Minnesota Mining and Manufacturing) v. Browner*, 17 F.3d 1453, 1460-63 (D.C.Cir. 1994); *United States v. Core Laboratories. Inc.*, 759 F.2d 480, 482-84 (5th Cir. 1985); *United States v. Witherspoon*, 211 F.2d 858, 862 (6th Cir. 1954); *SEC v. Jones*, No. 05 Civ. 7044, 2006 WL 1084276, at *3-6 (S.D.N.Y. Apr. 25, 2006); *SEC v. Scrushy*, No. CV-03-J-615S, 2005 WL 3279894, at *2-3 (N.D. Ala. Nov. 29, 2005); *United States v. Maillard*, 26 F. Cas. 1140, 1143 (S.D.N.Y. 1871); *In re Landsberg*, 14 F. Cas. 1065 (E.D. Mich. 1870).

The *Alexander* court does point out, though, that there is at least one case finding that the § 2462 statute of limitations clock starts running at the time the violation was discovered or should have been discovered by the agency bringing the enforcement action. *Id.* Moreover, the case the *Alexander* court identifies comes out of this District. *See SEC v. Buntrock*, No. 02 C 2180, 2004 WL 1179423, at *11-12 (N.D. Ill. May 25, 2004).

In determining that the "discovery rule" applied, the *Buntrock* court looked principally to the Seventh Circuit's decision in *Law v. Medco Research, Inc.*, 113 F.3d 781 (7th Cir. 1997). Indeed, *Law* was a securities fraud case, and the panel did conclude that the limitations clock should not start running before the plaintiff had inquiry notice. *Law*, 113 F.3d at 785-86.[7] Nevertheless, there are at least two significant factors that differentiate *Law* from the situation here (or in *Buntrock*). First, whereas *Law* was a private right of action, the plaintiff here is the SEC. The SEC has a veritable army of trained attorneys, all of whose salaries are paid for with public dollars. In addition, unlike a private securities plaintiff, the SEC possesses subpoena power even before it files a lawsuit. This provides the Commission with a distinct investigatory advantage over a typical private securities plaintiff. This advantage at least partially undermines the policy justification for delaying the start of the limitations clock.

Second, the statute of limitations at issue in *Law* was a one-year limit; here § 2462 provides a five-year limit. This longer limitations period cuts against the application of the "discovery rule" here. The policy behind the "discovery rule" makes perfect sense in the context

---

[7]In *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 115 F.3d 1332 (7th Cir. 1997), the Seventh Circuit explained that there is a difference between the rule set forth in *Law* (i.e. inquiry notice) and a "discovery of the violation" rule. 115 F.3d. at 1335 (noting that "[w]e tried to clarify the distinction in *Law*" between inquiry notice and discovery of the violation).

of a short, one-year limitations period. With such a limited time period, there are clear benefits to delaying the point at which the clock starts ticking. As the length of the limitations period expands, however, the rationale for the "discovery rule" correspondingly diminishes.

These two distinguishing factors, even taken together, do not necessarily mean that the court reached the wrong result in *Buntrock*. *See Badaracco v. C.I.R.* 464 U.S. 386, 391-392 (1984) ("Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.") (*quoting E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)); *United States v. Greene-Thapedi*, 398 F.3d 635, 637-38 (7th Cir. 2005). Nevertheless, the combination of the two at the very least suggests that Judge Posner's reasoning in *Law* does not flow perfectly into the conclusion that the "discovery rule" should apply here. This is a difficult legal question, but I conclude that I need not answer it in this case. The resolution of this discrete issue is non-dispositive here because the ultimate outcome of this case is the same whether I conclude that the "discovery rule" does or does not apply. This is based upon my answer to the second sub-question—i.e., that the accrual date for this claim was July 19, 2002.

### 2. The Accrual Date For This Claim Is July 19, 2002

As set forth above, § 2462 states that an action must be commenced "within five years from the date when the claim first *accrued*." 18 U.S.C. § 2462 (emphasis added). Assuming—without deciding—that the "discovery rule" were to apply (a result that would favor the SEC here), I would still have to identify an accrual date. In conjunction with the "discovery rule, the accrual date "is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been

injured." *Cada*, 920 F.2d at 450. When the Seventh Circuit applied the "discovery rule" in a securities case, it defined the accrual date as the point at which "the plaintiff learns or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him[,] by such further investigation as the facts would induce in a reasonable person[,] to sue within [five] year[s]." *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997) (*citing Law*, 113 F.3d at 785)).[8]

In this case, I conclude that the accrual date—i.e., the date when the Commission had learned enough facts to enable it, through further investigation, to sue within five years—was July 19, 2002. On July 18 and 19, 2002, Nicor issued press releases. In those releases, the company announced, among other things, that:

- ♦ "There have recently been allegations that the company acted improperly in connection with the PBR program, and the ICC has advised the company that it is reviewing these allegations."

- ♦ "In response to these allegations, the Nicor, Inc. board of directors today appointed a special committee of independent, non-management directors to conduct an inquiry into issues surrounding natural gas purchases, sales, transportation and storage."

- ♦ "[I]t is possible that, as a result of the allegations relating to the PBR program, the company will have to restate some prior period financial results or take a charge against future earnings."

- ♦ "The Nicor Gas performance-based rate plan may have a material adverse effect on earnings in a particular period."

---

[8]The *Fujisawa* court's formulation of the "discovery rule" seems to call into further question the notion that such a rule should apply in a case like this. First, Judge Posner speaks of both "the protection of one's legal rights" and inducing "a reasonable person" to sue. 115 F.3d at 1334. That language seems ill-fitting where, as here, the plaintiff is a federal agency like the SEC. Furthermore, Judge Posner spoke of the rule in the context of a one year statute of limitations. *Id.* The applicable period here is five years.

9

I find, without hesitation, that these disclosures—even assuming the application of the "discovery rule"—were enough to trigger the start of the limitations clock. That is, these disclosures were sufficient to put the Commission on notice that a violation may have occurred. The SEC contends that the earliest that a claim against Defendants arguably accrued was October 29, 2002. That is the date Nicor announced the findings of its internal investigation and announced that it would restate its financial statements. In fact, the Commission seeks a determination that the date was even later than that; the Commission argues that it could not establish that the Defendants acted with the requisite scienter until sometime in early 2003.

Reflecting on the SEC's position, one is reminded of the story of the mouse and the cookie: if you give a mouse a cookie, he will ask for a glass of milk, and how can he drink his milk without a straw, etc.[9] The SEC receives the benefit of the five-year statute of limitations. It also seeks the application of the "discovery rule," which would start the clock ticking at the time the alleged injury was discovered instead of when the alleged act was committed. And now, the Commission seeks the most generous possible accrual date; not the date when it *first* learned of facts indicating there might be a problem, but the date it had learned *all* the facts necessary to file a suit.

The accrual date the Commission seeks—a date after it had all the facts necessary to file a claim—is inconsistent with the tenor of the court of appeals' holdings in *Law* and *Fujisawa*. The *Fujisawa* court spoke explicitly about "further investigation" after the limitations clock has started running. 115 F.3d at 1334. Furthermore, Judge Posner derided the *Fujisawa* plaintiff's contention "that the statute of limitations doesn't begin to run until the victim has in hand *all* the

---

[9]Laura Joffe Numeroff and Felicia Bond, *If You Give A Mouse A Cookie* (1985).

facts he needs in order to bring suit immediately." *Id.* at 1335 (emphasis in original). Yet, this is precisely the determination the Commission asks me to make here. The SEC wants me to find that the claims did not accrue until it had everything it needed to commence these proceedings.

The *Fujisawa* court also says that the notice necessary to start the clock running is that which would "incite the victim to investigate" and to enable him to "complete the investigation in time to file a timely suit." *Id.* All of this language suggests that the court envisioned additional investigation *after* the limitations clock starts. The Commission, however, asks me to delay stating the limitations clock until it had all the information necessary to file its complaint. The SEC seeks an accrual date that would enable it to "complete [its] investigation, draft [its] complaint, and put the complaint in a drawer to be taken out in [five] year[s] and filed . . . ." *Id.* at 1334. The date the SEC proposes misapprehends the interplay between the "discovery rule" and the concept of accrual.

Another reason why the Commission's proposed accrual date is inappropriately late is the fact that the SEC has the power to issue subpoenas even before a lawsuit is filed. The *Fujisawa* court indicated that a plaintiff's access to the information it needs in order to plead its claim is a factor to be considered in setting the accrual date. *Id.* at 1335. As I noted above, the power to issue subpoenas before a suit is filed is one of the advantages the SEC enjoys vis-a-vis a private securities plaintiff. This factor not only counsels against applying the "discovery rule" in the first place, but it cuts against setting the accrual date as late as the Commission proposes as well. The power to issue subpoenas enhances the Commission's ability to conduct an effective investigation and undermines the notion that the SEC would be unfairly hampered by a July 19 accrual date. At bottom, I conclude that the claim in this case accrued on July 19, 2002. *But see Buntrock*, 2004 WL 1179423, at *12 (opining, in *dicta*, that the accrual date in that case did not

occur until the SEC had "information demonstrating that the defendants acted with the requisite scienter . . . .").

The Commission objects to a July 2002 date, arguing "the existence of unsubstantiated allegations by an unidentified whistleblower, without more information and prior to any investigation, would not put anyone on notice of potential fraud claims or provide any basis to know who within the company was responsible." I am unpersuaded. Importantly, I don't conclude that the Commission had to be ready to file a suit on July 19, 2002. Rather, my holding is simply that July 19 is when the clock started ticking: a *five-year* clock. In light of the nature of Nicor's July 18 and 19 disclosures, the five-year limitations period, the SEC's subpoena power, and its cadre of publicly employed investigators, the Commission's protestations ring more than a little hollow. To emphasize the point, Nicor's board appointed a committee to investigate this matter in July 2002, and the committee issued its report in October of that year. In addition, various private plaintiffs filed several class action lawsuits against Nicor and these Defendants between July 19, 2002 and the end of October. If the board could conduct an investigation—and if private plaintiffs could file lawsuits—in a little over three months, surely the SEC could conclude its investigation and file its suit within five years. My conclusion is justified, even in light of the proposition—which I recognize—that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco*, 464 U.S. at 391-392 (1984).

Because I set the accrual date at July 19, 2002, that means that the five-year statute of limitations clock began running then. Thus, in order for the Commission to have filed a timely claim for civil penalties, it must have done so by July 19, 2007. The Commission did not file its complaint until August 9, 2007. Accordingly, the Commission may not rely on any pre-July 19,

2002 events in attempting to prove its claims for civil penalties. The issue thus becomes whether the Commission's request for civil penalties must be dismissed outright, or whether there are other events that could constitute a basis for relief.

  B. *Which of Defendants' Alleged Misstatements Are Actionable?*

    1. **August 14 Disclosures**

I am not—at this time—dismissing the Commission's prayer for civil penalties outright. That is because in addition to the pre-July 19, 2002 statements upon which the Commission relies, the SEC also claims that the Forms 8-K and 10-Q Nicor filed on August 14, 2002 are actionable.[10] Defendants—citing a Third Circuit case—argue that nothing in those statements constitutes a basis upon which relief can be granted. The Third Circuit case in question is *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3rd Cir. 2000). The *Semerenko* court held that the curative warning statements the defendants in that case made, coupled with the sharp decline in the defendant's stock price, rendered the prior misrepresentations in that case "immaterial as a matter of law." 223 F.3d at 181. Defendants argue that the July 18 and 19 press releases Nicor issued served the same purpose as the curative warning statements the defendants made in *Semerenko*. Defendants also point to the sharp decline in Nicor's stock price on July 19. Defendants complete their argument by suggesting that the only material in the August 14 statements that could possibly be considered false or misleading was rendered immaterial by the prior curative statements.

I decline to grant the motion to dismiss the civil penalties claims in their entirety as against Defendants Fisher and Halloran at this time. Defendants' position may ultimately

---

[10]The Commission does not allege that Defendant Behrens signed these August 2002 reports, thus, the claim for civil penalties is dismissed as against him.

prevail. Based upon the papers before me now, though, I am not certain that the Commission will be unable, as a matter of law, to prove that the certifications in the August 14 disclosures were false or misleading.

### 2. "Continuing Violations Doctrine"

In light of the fact that allegedly actionable statements occurred within the limitations period (i.e., the August 14 disclosures), the Commission asks me to apply the "continuing violations doctrine" and deem the pre-July 19, 2002 disclosures actionable as well. The "continuing violations doctrine" at times operates to permit recovery even for violations occurring outside of the limitations period if other closely-related violations continued into the limitations period.

I decline to apply the doctrine here. First, the Seventh Circuit has yet to rule that this doctrine applies in the context of securities cases. Courts in the Second Circuit have expressed a reluctance to apply the doctrine in securities cases. *See In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825, 2008 WL 495547, *17 (E.D.N.Y. February 20, 2008) ("The weight of authority in this circuit is skeptical of the application of the continuing violations doctrine in securities fraud cases."). At least one of my colleagues in this District has applied the doctrine in a securities case, though. *See SEC v. Ogle*, No. 99 C 609, 2000 WL 45260, *5 (N.D. Ill. January 11, 2000).

Even assuming the "continuing violations doctrine" was appropriate in some securities cases, I find that it is inapplicable under the circumstances here. That is because the July 18 and 19 press releases that Nicor issued represent a dramatic break. Even if the SEC is ultimately able

to prove that the August 14, 2002 disclosures contained actionable misstatements,[11] those disclosures are sufficiently separate and distinct from Defendant's other alleged misdeeds—again, because of the revelations in the July press releases—that the "continuing violations doctrine" is inapplicable here.

### III. THE COMMISSION'S REQUEST FOR EQUITABLE RELIEF

Both sides agree—and one need look no further than the words of the statute to conclude— that the five-year statute of limitations in § 2462 does not apply to actions seeking purely equitable relief. Therefore, it would seem, at first blush anyway, that Defendants have no basis upon which to argue that the Commission's requests for an order requiring Defendants to disgorge all ill-gotten gains, an order of permanent injunction, and an order prohibiting Defendants from acting as officers or directors of certain issuers are time-barred. That said, Defendants make a good-faith effort—however, they fall short.

*A.     Disgorge Ill-Gotten Gains*

Defendants seek to have the Commission's claim for disgorgement of ill-gotten gains dismissed. However, in *Johnson*, the D.C. Circuit held that "where the effect of the SEC's action is to restore the *status quo ante*, such as through a proceeding for restitution or disgorgement of ill-gotten profits, § 2462 will not apply." 87 F.3d at 491 (*citing SEC v. Lorin*, 869 F.Supp. 1117, 1122-23 (S.D.N.Y. 1994)). I agree with Defendants that the Commission will ultimately have to prove that its disgorgement figure reasonably approximates the amount of unjust enrichment. *See SEC v. Collins*, 01 C 3085, 2003 WL 21196236, at *5 (N.D. Ill. May 21, 2003). However, there is no basis upon which to dismiss that claim at this stage of the proceedings.

---

[11]And in light of the Third Circuit's holding in *Semerenko*, that might be a big "if."

15

B.   *Permanent Injunction*

Defendants do not seem to even argue that there is a basis for dismissing the Commission's prayer for a permanent injunction now.  I decline to do so.

C.   *Prohibiting Defendants From Acting As Officers Or Directors*

Defendants—relying on the D.C. Circuit's holding in *Johnson v. SEC*, 87 F.3d 484, 492 (D.C.Cir. 1996)—seek a determination that the Commission's claim for an order prohibiting Defendants from acting as officers or directors of certain issuers is actually remedial in nature. Such a determination, at least according to the D.C. Circuit's reasoning, would trigger the application of § 2462 and, based on the reasoning above, knock out this claim as time-barred.

Defendants' arguments notwithstanding, I am not dismissing this claim now.  In *Johnson*, the D.C. Circuit concluded that the SEC censure at issue in that case was remedial in nature after reviewing the well-developed record.  87 F.3d at 490.  The court specifically noted that "[a]lthough the ALJ held two days of hearings, with three witnesses and 22 exhibits, the SEC cites not a single piece of evidence in the record explicitly supporting its finding that [the] suspension of Johnson was necessary due to Johnson's current unfitness to be supervisor." *Id.* The point is, the court did not conclude that the censure there was remedial in the abstract. Rather, it so concluded by reviewing the record and isolating the Commission's rationale for imposing the censure it did.  Accordingly, I am unwilling at this stage to conclude that the Commission's efforts to secure an order prohibiting Defendants from acting as officers or directors of certain issuers is actually remedial in nature.  Such a determination may be possible as the record gets more fully developed, but it is premature now.

**IV.     DEFENDANT'S MOTION TO STRIKE**

Defendants also ask me to strike certain allegations from the Commission's complaint. I decline their request. Federal Rule of Civil Procedure 12(f) provides that "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and usually denied. *See Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F.Supp.2d 905, 907 (N.D. Ill. 2000). Courts will strike portions of a complaint if the challenged allegations are so unrelated to the present claims as to be void of merit and unworthy of consideration and if the allegations are unduly prejudicial. *Kies v. City of Aurora*, 149 F.Supp.2d 421, 427 (N.D. Ill. 2001); *Robinson v. City of Harvey*, No. 99 C 3696, 1999 WL 617655, at *1-2 (N.D. Ill. Aug.11, 1999). None of the allegations that Defendants seek to strike are sufficiently unrelated or prejudicial to warrant the remedy Defendants seek.

**V.     CONCLUSION**

In sum, I am not dismissing anything except for the claim for civil penalties as against Defendant Behrens. Nevertheless, I conclude that the claims here accrued on July 19, 2002. Therefore, the SEC may not rely on any pre-July 19, 2002 events when attempting to prove its claims for civil penalties as against Defendants Fisher and Halloran. Defendants' motions to dismiss [Docket #27 and #30] are denied in all other respects.

ENTER:

*/s/ James B. Zagel*

James B. Zagel
United States District Judge

DATE:  May 13, 2008